**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on May 22, 2007, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



_____
**Arthur I. Harris**

**Dated: May 22, 2007**           **United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 Proceedings |
| | ) | |
| RICHARD A. MONACO, and | ) | Case No. 04-25085 |
| SHERRY K. MONACO | ) | |
|    Debtors. | ) | Judge Arthur I. Harris |
| | ) | |
| JOANNE MESSINA, | ) | Adversary Proceeding |
|    Plaintiff, | ) | No. 05-1209 |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD A. MONACO, and | ) | |
| SHERRY K. MONACO | ) | |
|    Defendants. | ) | |

MEMORANDUM OF OPINION[1]

    The plaintiff, Joanne Messina, filed this adversary proceeding seeking a money judgment for fraud against the debtor-defendants, Richard and Sherry Monaco, and a determination that the debt is nondischargeable. The alleged

---

[1] This opinion is not intended for official publication.

fraud stems from a $36,000 investment made on Messina's behalf with the Monacos in a business called the Center Street Cafe in 2002. For the reasons that follow, judgment is entered in favor of the plaintiff and against the defendants jointly and severally in the amount of $36,000, with interest from the date of judgment at the rate provided in 28 U.S.C. § 1961. This debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## JURISDICTION

Determinations of dischargeability are core proceedings under 28 U.S.C. § 157 (b)(2)(I). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio. Bankruptcy courts also have "jurisdiction to adjudge the validity and amount of a claim" when determining dischargeability. *Longo v. McLaren* (*In re McLaren*), 3 F.3d 958, 965 (6th Cir. 1993).

## FINDINGS OF FACT PURSUANT TO BANKRUPTCY RULE 7052

On March 2, 2004, Ms. Messina filed a complaint against Richard and Sherry Monaco in the Cuyahoga County Court of Common Pleas. On November 26, 2004, Richard and Sherry Monaco filed a Chapter 13 bankruptcy petition, thereby staying the common pleas action. On March 9, 2005, the Court

granted the Chapter 13 trustee's motion to convert the Monacos' bankruptcy to a proceeding under Chapter 7. On April 27, 2005, Ms. Messina filed this adversary proceeding seeking a money judgment and a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A), or § 523(a)(4).

On March 14, 2007, the Court conducted a bench trial. Although much of the testimony was conflicting, the Court finds the following facts pursuant to Bankruptcy Rule 7052.[2]

Sometime around the late summer to early fall of 2002, Richard and Sherry Monaco considered purchasing the Center Street Cafe (the restaurant) in Brunswick, Ohio. Because the Monacos had no experience in the restaurant business, they approached Sherry's aunt, Joanne Messina, and her domestic partner, Frank Ragone, for advice. Mr. Ragone had owned his own restaurant for over twenty-five years, and had acted as a restaurant manager for an additional ten years.

---

[2] The findings of fact contained in this memorandum of opinion reflect the Court's weighing of evidence, including consideration of the credibility of the witnesses. "In doing so, the court considered each witness's demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court has considered the testimony of all the witnesses, as well as all exhibits admitted into evidence.

3

Mr. Ragone sought the assistance of his long time friend and attorney, Raymond Costanzo, to incorporate the restaurant and draft contracts between the parties. Mr. Costanzo did not draft any of the documents regarding the purchase of the restaurant because he became involved with the purchase after the seller's attorney had drafted the necessary documents. However, Mr. Costanzo was present at the closing of that sale and had discussions with the parties concerning their understanding of the transaction.

Mr. Ragone was convicted of a felony in 1986 which prevented him from obtaining a liquor license in his name, and which similarly would prevent any corporation of which he was an officer from receiving a liquor license. The parties agreed that Mr. Ragone would contribute one-half of the purchase price. In order to avoid potential problems in obtaining a liquor license, Mr. Ragone and Ms. Messina agreed that the money Mr. Ragone provided would be contributed on Ms. Messina's behalf. The Monacos, Ms. Messina, and Mr. Ragone further agreed to incorporate and divide the corporate shares equally between Joanne Messina and Sherry Monaco. The Monacos and Mr. Ragone also agreed that Mr. Ragone would receive an employment contract from the restaurant, and that all profits from the business would be split equally between Ms. Monaco and Ms. Messina. This agreement was acceptable to the Monacos because they would receive financial

assistance in purchasing the restaurant as well as the expertise of Mr. Ragone, and it was acceptable to Mr. Ragone because he would receive the opportunity to provide financially for Ms. Messina in the event that he would predecease her. Although Richard and Sherry Monaco outwardly expressed to Mr. Ragone an intention to share ownership of the restaurant with Joanne Messina, they testified at trial that they never intended to give Ms. Messina any ownership interest.

In order to provide the one-half purchase price for the restaurant, Mr. Ragone obtained a loan from his niece. On October 14, 2002, with the intention of obtaining a one-half interest in the corporation for Ms. Messina, Mr. Ragone wrote two checks totaling $36,000 from his niece's business, Bianca's Restaurant, Inc., payable to the order of Sherry Monaco. This $36,000 was the only money provided at the closing. Contrary to the agreement between the Monacos and Mr. Ragone, the Monacos presented no funds at that time. After the closing, Mr. Ragone personally provided additional funding for various operational expenses.

The parties began operating the Center Street Cafe the day after purchasing the business from the prior owner; however, from the start, operation was not without problems. Shortly after operations began, a problem with the air conditioning unit was discovered. Richard Monaco refused to provide the

5

remaining purchase price of the restaurant until the unit was replaced. Mr. Costanzo was able to negotiate an agreement between Mr. Monaco and the seller's attorney whereby Mr. Monaco would deposit the funds in Mr. Costanzo's trust account pending a resolution. However, Mr. Monaco subsequently changed his mind and refused to abide by the terms of the agreement. Because of Mr. Monaco's recalcitrance, Mr. Costanzo withdrew from representation and referred Mr. Monaco to another attorney.

Problems also arose at the restaurant between Mr. Monaco and Mr. Ragone which resulted in each leaving the business at different times. Finally, on December 13, 2002, just under two months after taking over the business from the prior owners, Mr. Monaco informed Mr. Costanzo that he had changed the locks and security codes at the restaurant. Mr. Monaco and Mr. Costanzo then discussed repayment of Ms. Messina's investment. Mr. Monaco informed Mr. Costanzo that he would need eighteen months to repay the money, so he requested that Mr. Costanzo draft a promissory note payable to Joanne Messina for $42,000 with interest over time, and secured by Mr. Monaco's rental property. Mr. Costanzo drafted the promissory note that night, but discovered the next day that Mr. Monaco had retained Richard Goulder to represent the Monacos in the negotiations with Ms. Messina and Mr. Ragone. Thereafter, Mr. Costanzo

6

continued to negotate with Mr. Monaco on behalf of Ms. Messina and Mr. Ragone.

Mr. Costanzo and Mr. Goulder had several conversations over the next month regarding repayment of the investment. These conversations resulted in several offers from Mr. Monaco, each of which was subsequently revoked. On January 13, 2003, the Monacos' attorney, Mr. Goulder, sent a letter to Mr. Costanzo which read:

> Be advised that my clients Richard and Sherry Monaco will agree to purchase the interest of your client JoAnne [sic] Messina in Center Street Cafe for the consideration of Thirty Six Thousand Dollars ($36,000.00) by means of a Promissory Note secured by their corporate interests only, payable over a period of five (5) years at five percent (5%) per annum beginning April 1, 2003.

Plaintiff's Exhibit 9. Mr. Costanzo relayed this offer to his client, but as with the prior offers, Mr. Costanzo was informed that the terms were no longer acceptable to Mr. Monaco, and negotiations ceased. In 2004, Messina commenced a lawsuit against the Monacos in state court, but the lawsuit was stayed when the Monacos filed their bankruptcy petition on November 26, 2004.

Although the Monacos dispute many of the facts described above, the Court finds the Monacos' version of events to be less credible for a number of reasons. For example, the Monacos' version of events was contradicted by contemporary written records, such as their attorney's acknowledgment of Joanne Messina's

7

05-01209-aih    Doc 51    FILED 05/22/07    ENTERED 05/22/07 16:09:33    Page 7 of 13

interest in the Center Street Cafe. Their testimony was also contradicted by testimony of attorney Raymond Costanzo, whose testimony the Court found to be very credible. Plus, it makes little sense that Ragone and Messina would have given the Monacos $36,000 with nothing in return except the opportunity "manage the bar and teach [the defendants'] son the business." Mr. Monaco also testified that he and his wife knowingly submitted a false affidavit to the State of Ohio, in which Mrs. Monaco, under penalty of perjury, falsely claimed that the purchase price of the Center Street Cafe came from a loan from Wendy Manternach. On the other hand, one portion of the Monacos' testimony that the Court does find credible and consistent with other evidence is their assertion that they never intended to give Ms. Messina an ownership interest in the restaurant, despite outward representations to the contrary.

## CONCLUSIONS OF LAW

Ms. Messina filed her adversary complaint seeking a money judgment and a finding of nondischargeability based upon the fraud of the defendants. The defendants argue that Ms. Messina does not have standing to bring this action because the $36,000 they received came directly from Mr. Ragone, and accordingly, Ms. Messina suffered no injury in fact. However,

[i]t is a well settled principle of law that the requisites of a valid gift inter

8

> vivos are an intent on the part of the donor to make an immediate gift of property and a delivery thereof to the donee, or to a third person as trustee for the donee, with relinquishment of all dominion and control over the property by the donor.

*Streeper v. Myers*, 7 N.E.2d 554, 556 (Ohio 1937). Acceptance of a gift is presumed when the gift is beneficial to the donee, even if "the gift is delivered to a third party as trustee for the donee without the latter's knowledge." *Streeper*, 7 N.E.2d at 556. When a gift is delivered to a third party, delivery is determined "from the intention of the donor, the situation and relation of the parties, the kind and character of the property, and the things said and done in regard thereto as disclosed by the evidence." *Streeper*, 7 N.E.2d at 556; *see also*, 52 *Oh. Jur. Gifts* § 17 (delivery complete when donor manifests an intent to vest immediate title in the donee). Mr. Ragone made a gift to Ms. Messina when he delivered the $36,000 to Sherry Monaco for Ms. Messina's benefit. The close relationship between Mr. Ragone and Ms. Messina, the conversations Mr. Ragone had with the Monacos, Ms. Messina, and Mr. Costanzo, as well as Mr. Ragone's stated intent of providing for Ms. Messina all show that he delivered the money to Sherry Monaco as trustee for Ms. Messina. Ms. Messina accepted the offer after conversing with Mr. Ragone about the gift. Therefore, the $36,000 payment from Mr. Ragone to Sherry Monaco was a gift to Ms. Messina, thereby giving her standing to pursue

9

this action. This result is the same as if Mr. Ragone had written a check payable to Ms. Messina, who then endorsed the check and wrote her own check payable to Sherry Monaco. The additional funds provided by Mr. Ragone for various operational expenses were not intended as a gift to Ms. Messina, so Ms. Messina has no right to recover those amounts.

> Under Ohio law, the elements of an action in fraud are:
>
> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709 (Ohio 1987); *see also Andersons, Inc. v. Consol, Inc.*, 185 F. Supp.2d 833 (N.D. Ohio 2001), *quoting Burr v. Bd. of County Commrs. of Stark County*, 491 N.E.2d 1101 (Ohio 1986). Furthermore, under Ohio law, each of the elements of actual fraud must be shown by a preponderance of the evidence. *See Household Finance Corp. v. Altenberg*, 214 N.E.2d 667, 669-70 (Ohio 1966) (rejecting the argument that actual fraud must be proven by clear and convincing evidence); *cf. Grogan v. Garner*, 498 U.S. 279, 290 (establishing preponderance of the evidence standard for nondischargeability under 11 U.S.C. § 523 and citing *Altenberg* with approval).

10

Richard and Sherry Monaco both represented an intention to share ownership in the restaurant with Ms. Messina, but they never intended actually to do so. This representation was material to the transaction because it induced Mr. Ragone to invest $36,000 on behalf of Ms. Messina. Mr. and Mrs. Monaco made the representation with the intent to induce Ms. Messina and Mr. Ragone to provide them with financial assistance, knowledge, and experience. Ms. Messina and Mr. Ragone's reliance was justifiable based upon the parties' family relationship and prior history. Their reliance was the proximate cause of the loss because they would not have invested the $36,000 had they not relied upon the Monacos' false representation. Therefore, Ms. Messina is entitled to a money judgment of $36,000 on her claim of fraud against Richard and Sherry Monaco, jointly and severally.

Ms. Messina also seeks a determination that her claim based upon fraud is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).[3] Section 523 provides in pertinent part:

> (a) A discharge under section 727. . . of this title does not discharge

---

[3] This bankruptcy case was filed prior to October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 (BAPCPA). Therefore, all references to the Bankruptcy Code are to the Bankruptcy Code as it existed prior to the effective date of BAPCPA.

11

> an individual debtor from any debt –
> . . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . .

In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *See In re Rembert*, 141 F. 3d 277, 280-81 (6th Cir. 1998).

"[T]he elements of a dischargeability claim under 11 U.S.C. § 523(a)(2)(A) are virtually identical to the elements of a fraud claim in Ohio." *Schory v. Francis* (*In re Francis*), 226 B.R. 385, 389 (B.A.P. 6th Cir. 1998). Therefore, because Ms. Messina has established the elements of a fraud claim under Ohio law, her claim against the Monacos for fraud is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Having found this debt nondischargeable under section 523(a)(2)(A), the Court need not address the plaintiff's claim under section 523(a)(4).

12

CONCLUSION

For the foregoing reasons, judgment is entered in favor of the plaintiff and against the defendants jointly and severally in the amount of $36,000, with interest from the date of judgment at the rate provided in 28 U.S.C. § 1961.  This debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  The defendants shall bear the court costs, and each party shall bear its own attorney's fees.

IT IS SO ORDERED.